# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| RamSoft USA, Inc.,<br>　　　Plaintiff,<br><br>　　　　　　　　　　　v.<br><br>The Radiology Group LLC & Anand Lalaji,<br>　　　Defendants. | CA No. _____ - (\_\_\_)<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

RamSoft USA, Inc. ("Plaintiff"), by and through its undersigned counsel, hereby files this Complaint against Defendants The Radiology Group LLC ("TRG") and Anand Lalaji ("Lalaji," and with TRG, the "Defendants"), and in support thereof alleges as follows:

## THE PARTIES

1. Plaintiff is a corporation organized under the laws of Delaware with its principal place of business at 131 Continental Drive, Suite 301; Newark, Delaware 19713.

2. Upon information and belief, TRG is a limited liability company organized under the laws of Georgia, with its principal place of business at 3344 Peachtree Rd, NE, Suite 2080; Atlanta, GA 30326. It is subject to service pursuant

to its registered agent, Stembridge Taylor LLC; 4840 Roswell Road, Suite E300; Atlanta, GA, 30342.

3. Upon information and belief, Lalaji is a resident of Georgia, residing at 4532 Dudley Lane; Atlanta, GA 30327, and is the sole member of TRG.

## JURISDICTION

4. Jurisdiction is based on 28 U.S.C. § 1332. This action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over the Defendants each are domiciled in, and principally conduct business in, Georgia.

6. Venue is proper under 28 U.S.C. § 1391 because the Defendants reside in this district.

## FACTS

7. RamSoft is the developer of a best-in-class web-based software for the medical field. Relevantly here, it has developed the PowerServer, a cloud-based picture archiving and communication system ("PACS") that can support unlimited users, facilities, and workstations while enabling imaging data to be quickly and securely routed and images to be read at any time from anywhere.

8. On information and belief, TRG is a fast-growing, privately held radiology and teleradiology business headed by Anand Lalaji, its co-owner and CEO.

A. *The Agreement*

9. On July 21, 2019, Plaintiff and TRG entered into an LOI governing the relationship. Services were billed on an as-used basis and payable monthly.

10. The parties restated and memorialized their go-forward relationship on June 20, 2023, when the LOI was folded into the *PowerServer Sales Agreement* (the "Agreement"), through which RamSoft agreed to supply a PACS server to TRG (the "Server") and support the same. The Agreement is governed by Delaware law.

11. In exchange, Defendant agreed to pay Plaintiff a subscription fee of $45,000.00 per month, subject to adjustment for usage, during the times relevant hereto, as well as additional sums due for charges associated with the setup and continued maintenance of the Server (the "Monthly Charges").

12. Pursuant to § 12 of the Agreement, the Monthly Charges were to be paid on presentment, with a 15% late fee to be assessed on any balances over thirty days.

13. Further, pursuant to § 12 of the Agreement, RamSoft was allowed to suspend all services until all outstanding Monthly Charges are paid in full on five days' notice.

14. Finally, pursuant to § 12 of the Agreement, TRG had seven days after receipt of any invoice for Monthly Charges to dispute some or all of the same. It agreed that failing a timely dispute, TRG's "right to dispute such invoice shall be waived."

15. Termination is provided for by § 19 of the Agreement, which permits termination on a material breach of the Agreement that is not cured within thirty days and for immediate termination of the Agreement if the Monthly Charges are not satisfied within thirty days of presentment.

16. Fee-shifting for a successful suit is provided for by § 25 of the Agreement.

B.     *TRG Breaches the Agreement*

17. RamSoft has sent monthly invoices to TRG, setting forth the Monthly Charges.

18. TRG has routinely acknowledged these invoices and has never disputed any portion of any of the Monthly Charges.

19. Despite this, TRG has serially failed to pay the Monthly Charges as they come due.

20. As of now, RamSoft is owed $978,804.00 (the "Non-Payment") for unpaid fees, accrued interest, and costs associated with attempting to collect the overdue amounts.

### C. *TRG Offers Excuses & Demands Continued Services*

21. Throughout their relationship, TRG was serially unable to make the promised payments. For example, on a February 21, 2024, email to Ramanathan, Lalaji said that TRG could not sustain more than a $10,000.00 payment based on current cash flow.

22. In late 2023, TRG said it was going to resolve the outstanding balances by obtaining liquidity funding.

23. On January 22, 2024, Lalaji distributed what he purported to be a LOI from Five Crowns Capital, which would provide sufficient liquidity to pay the outstanding balances due RamSoft, to RamSoft's CEO Vijay Ramanathan and CFO Aaron Pelz.

24. In order to induce RamSoft to wait for this, or other financing to materialize, TRG provided what it said were its current financials.

25. On January 31, 2024, Joe Stephens of TRG sent Pelz an email stating: "I expect for the Balance Sheet to be complete by the end of the week. However, I have attached the 2023 quarterly P&L for your review. As illustrated, the Company's financial results are improving." That P&L shows an annual loss of $687,153.00.

26. On February 7, 2024, Joe Stephens of TRG sent Pelz the balance sheet outlining TPG's year-end 2023 financial situation. It lists $3.4 million in liabilities, including PPP loans, cash advances, notes, payroll owed, and tax liabilities.

27. In February of 2024, based on these financials, Lalaji negotiated a restructuring allowing TRG to send $10,000.00 per month to RamSoft until a liquidity event (e.g., the Five Crowns infusion) occurred; the amounts accruing and owing under the Agreement were to be turned into convertible debt (the "Modification").

28. It failed to make the Modification payments timely or to secure financing.

D. *The DOJ Investigation Comes to Light*

29. Instead, on March 26, 2024, Lalaji and TRG entered into a stipulation with the U.S. Department of Justice, admitting that they had submitted false claims related to radiology treatment. As a result of the foregoing conduct, Lalaji and TRG agreed to pay $2,678,387.21 to the federal government and another $421,612.79 to affected states.

30. TRG and Lalaji agreed to pay $592,454.38 within fourteen business days of the effective date of the stipulation and quarterly payments of $160,456.38 starting on June 30, 2024.

31. As a condition of their agreement with the Department of Justice, TRG and Lalaji averred that they "have reviewed their financial situation and warrant that they are solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I) and shall remain solvent following payment to the United States of the Settlement Amount."

32. Yet, TRG and Lalaji could not both be capable of paying over $50,000.00 per month and not able to satisfy its obligations to RamSoft on a go-forward basis. The settlement also made a liquidity event impossible. Yet the liabilities associated with this settlement were never disclosed to RamSoft. Had they been, the illegitimacy of the financing plan would have been readily apparent.

E. *TRG's Refusal to Meet Its Obligations Continues*

33. Since August 1, 2024, TPG has not made the requisite payments.

## COUNT I: BREACH OF CONTRACT
### (Against TPG)

34. Plaintiff incorporates by reference the allegations in paragraphs 1 through 32 above.

35. A contract, the Agreement, exists between TRG and RamSoft.

36. RamSoft has performed all of its obligations under the Agreement.

37. TRG breached the terms of the Agreement.

38.     As a result of the breach, RamSoft suffered damages in the amount of the Non-Payment plus applicable pre- and post-judgment interest at 15%, costs and fees, where such damages are provable to a reasonable certainty.

39.     The damages flowed from the TRG's breach.

## COUNT II: NEGLIGENT MISREPRESENTATION
### (Against Both Defendants)
### (Pled in the Alternative)

40.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 32 above.

41.     TRG and Lalaji had a pecuniary duty to provide accurate information.

42.     TRG and Lalaji represented false material facts as true, to wit TRG's balance sheet – which did not provide for a known liability – and by a fraudulent cash flow statement that cannot justify the warranty provided to the U.S. Department of Justice.  In addition, TRG and Lalaji's statements that a liquidity transaction was possible were patently false, given the circumstances.

43.     TRG and Lalaji failed to exercise reasonable care in obtaining or communicating this information.

44.     RamSoft reasonably relied on the representation or omission and suffered a pecuniary loss caused by such justifiable reliance in the amount of the Non-Payment plus applicable pre- and post-judgment interest at 15%, costs and fees.

## COUNT III: FRAUD
### (Against Both Defendants)

**(Pled in the Alternative)**

45. Plaintiff incorporates by reference the allegations in paragraphs 1 through 32 above.

46. TRG and Lalaji represented false material facts as true in order to obtain the Modification, to wit TRG's balance sheet – which did not provide for a known liability – and by a fraudulent cash flow statement that cannot justify the warranty provided to the U.S. Department of Justice. In addition, TRG and Lalaji's statements that a liquidity transaction was possible were patently false, given the circumstances. These created a false impression about the truth and the speaker failed to provide qualifying information to cure the mistaken belief and, in the case of the liquidity transaction, represented statements made with no intent of performance.

47. By providing false documents hiding this information, TRG and Lalaji actively concealed and prevented RamSoft from discovering the truth and failed to speak when having a duty to do so.

48. TRG and Lalaji made the false representations or omissions with knowledge or belief that the representation or omission was false, or with reckless indifference to the truth, and the intention to induce the plaintiff to act or refrain from acting based on the representation or omission.

49. RamSoft reasonably relied on these representations and/or omissions in entering into the Modification.

50. RamSoft suffered damage as a result of its reliance on an amount greater than or equal to the Non-Payment.

51. The fraud was gross, oppressive, and aggravated and/or involved a breach of trust or confidence.

52. RamSoft requests that the Modification be rescinded, it be provided rescissory damages in an amount proven at trial as well as punitive damages in an amount proven at trial, or alternatively, actual damages in the amount of the Non-Payment plus applicable pre- and post-judgment interest at 15%, costs and fees as well as punitive damages in an amount to be determined at trial.

## COUNT IV: DECLARATORY JUDGEMENT
### (Against TRG)

53. Plaintiff incorporates by reference the allegations in paragraphs 1 through 32 above.

54. An actual controversy exists between TRG and RamSoft concerning the obligations that TRG has to tender payments on a go-forward basis, and RamSoft's right to terminate services.

55. As alleged previously, TRG is not making payments as they come due.

56. Under Delaware law, a party's material breach of a contract relieves the non-breaching party of its duty to perform.

57. Under the Agreement, the Monthly Charges are due and owing each month and must be paid.

58. A failure to pay the Monthly Charges permits RamSoft to terminate the Agreement within five days of non-payment.

59. The Modification is invalid and of no force and effect.

60. RamSoft, therefore, seeks a declaratory judgment that: a) TRG's failure to pay the Monthly Charges constitutes a material breach; b) RamSoft is entitled to cease performance, including but not limited to, by no longer providing access to the Server; and c) RamSoft's cessation of performance, if it occurs, does not constitute a breach of any contract between TRG and RamSoft.

## COUNT V: Conspiracy
## (All Defendants)

61. Plaintiff incorporates by reference the allegations in paragraphs 1 through 32 above.

62. TRG and Lalaji formed a confederation or combination of two or more persons.

63. An unlawful act was done in furtherance of this conspiracy.

64. TRG and Lalaji caused actual damage to RamSoft in the amount of the Non-Payment plus applicable pre- and post-judgment interest at 15%, costs and fees as well as punitive damages in an amount to be determined at trial.

## COUNT VI: Quantum Meruit
### (All Defendants)

64. Plaintiff incorporates by reference the allegations in paragraphs 1 through 32 above.

65. At the request of TRG and Lalaji, RamSoft has provided services valuable to TRG and Lalaji.

66. TRG and Lalaji knowingly accepted the valuable services provided by RamSoft.

67. RamSoft expected compensation at the time that it provided the services to TRG and Lalaji, and both TRG and Lalji knew that such compensation was expected.

68. In providing the services to TRG and Lalaji, RamSoft has conferred a benefit on TRG and Lalaji, and failure to compensate RamSoft for the services it provided would be unjust.

69. The just and reasonable compensation to RamSoft for the services provided is, at a minimum, the Non-Payment, which exceeds $75,000.

## COUNT VII: BREACH OF CONTRACTUAL OBLIGATIONS OF GOOD FAITH & FAIR DEALING
### (Against TPG)

70. Plaintiff incorporates by reference the allegations in paragraphs 1 through 32 above.

71. A contract, the Agreement, exists between TRG and RamSoft.

72. RamSoft has performed all of its obligations under the Agreement.

73. TRG breached the implied covenants of good faith and fair dealing inherent in every contract, including the Agreement, by arbitrarily or unreasonably preventing RamSoft from receiving the benefits of the contract.

74. As a result of the breach, RamSoft suffered damages in the amount of the Non-Payment plus applicable pre- and post-judgment interest at 15%, costs and fees, where such damages are provable to a reasonable certainty.

75. The damages flowed from the TRG 's breach.

## COUNT VIII: Attorneys Fees
### (All Defendants)

76. Plaintiff incorporates by reference the allegations in paragraphs 1 through 32 above.

77. By and through their conduct, TRG and Lalaji have acted in bad faith, been stubbornly litigious and have caused Plaintiff unnecessary trouble and expense.

78. Accordingly, RamSoft is entitled to recover the expenses of litigation from all Defendants including reasonable legal fees.

## COUNT IX: UNJUST ENRICHMENT
### (All Defendants)

79. Plaintiff incorporates by reference the allegations in paragraphs 1 through 32 above.

80. TRG and Lalaji have been enriched and RamSoft impoverished.

81. There is a relation between the enrichment and impoverishment.

82. There was no justification for the events complained of herein and no remedy provided by law.

## JURY TRIAL DEMAND

A jury trial is demanded on all issues so triable.

[Remainder of Page Intentionally Left Blank]

WHEREFORE, RamSoft respectfully requests that this Court enter judgment in its favor and against Defendants as follows:

A. Awarding compensatory and punitive damages in an amount to be determined at trial, but not less than the Non-Payment from either or both of TRG or Lalaji, jointly and severally;

B. Awarding pre- and post-judgment interest at the contractual rate of 15% APR;

C. Awarding RamSoft its costs and reasonable attorneys' fees incurred in this action;

D. Entering a declaratory judgment as described in Count IV above;

E. Recovery from the Defendant additional damages for unjust enrichment to be proven at trial and measured from the standpoint of the value of the benefit conferred upon the Defendant; and

F. Granting such other and further relief as the Court deems just and proper.

[Remainder of Page Intentionally Left Blank]

Dated: October 22, 2024

*/s/ Mark Billion*
Mark Billion (GA Bar No. 768687)
BILLION LAW
110 Traders Cross
Bluffton, SC 29909
Tel: 302.428.9400
markbillion@billionlaw.com

*Counsel for Plaintiff*