**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| RamSoft USA, Inc.,<br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>The Radiology Group LLC, Anand Lalaji<br>& Joe Stephens.<br>　　　　　Defendants. | CA No. 24-cv-04821-TRJ<br><br>JURY TRIAL DEMANDED |

**~~FIRST~~SECOND AMENDED COMPLAINT**

RamSoft USA, Inc. ("Plaintiff" or "Ramsoft"), by and through its undersigned counsel, hereby files this Complaint against Defendants The Radiology Group LLC ("TRG"), Anand Lalaji ("Lalaji"), and Joe Stephens ("Stephens," and with TRG and Lalaji, the "Defendants"), and in support thereof alleges as follows:

**THE PARTIES**

1.　　Plaintiff is a corporation organized under the laws of Delaware with its principal place of business at 131 Continental Drive, Suite 301; Newark, Delaware 19713.

2.　　Upon information and belief, TRG is a limited liability company organized under the laws of Georgia, with its principal place of business at 3344 Peachtree Rd, NE, Suite 2080; Atlanta, ~~GA~~Georgia 30326. It is subject to service

RamSoft (k)
SAC
3-4-2026

pursuant to its registered agent, Stembridge Taylor LLC; 4840 Roswell Road, Suite E300; Atlanta, ~~GA,~~Georgia 30342.

3. Upon information and belief, Lalaji is a resident, domiciliary, and citizen of Georgia, residing at 4532 Dudley Lane~~;~~, Atlanta, ~~GA~~Georgia 30327~~,~~. On information and belief, Lalaji is the sole member and Chief Executive Officer ("CEO") of TRG.

4. Upon information and belief, Stephens is a resident, domiciliary, and citizen of Georgia, residing at 3207 Fonseca Pass, Atlanta, ~~GA~~Georgia 30349. During all times material to this action, Stephens served as an officer of TRG, to wit, its Chief Financial Officer ("CFO").

## JURISDICTION

5. Jurisdiction is based on 28 U.S.C. § 1332. This action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over the Defendants, as each ~~are~~is domiciled in, and principally ~~conduct~~conducts business in, ~~Georgia~~this district.

7. Venue is proper under 28 U.S.C. § 1391 because the Defendants reside in this district.

## FACTS

8. RamSoft is the developer of a best-in-class web-based software for the medical field. Relevantly here, it has developed the PowerServer, a cloud-based picture archiving and communication system ("PACS") that can support unlimited

RamSoft (k)
SAC
3-4-2026

users, facilities, and workstations while enabling imaging data to be quickly and securely routed and images to be read at ~~anytime~~any time from anywhere.

9. ~~On~~Upon information and belief, TRG is a ~~fast growing,~~ privately held radiology and teleradiology business headed by Anand Lalaji, its ~~co-owner and~~ CEO.

### A. The Agreement

10. On ~~July~~June 21, 2019, Plaintiff and TRG entered into ~~an~~a *Letter of Intent* (the "TRG LOI") governing the relationship. Services were billed on an as-used basis and payable monthly.

11. The parties restated and memorialized their go-forward relationship on June 20, 2023, when the TRG LOI was folded into the PowerServer Sales Agreement (the "Agreement"), through which RamSoft agreed to supply a PACS server to TRG (the "Server") and support the same.

12. The Agreement is governed by Delaware law.

13. In exchange, ~~Defendant~~TRG agreed to pay Plaintiff a subscription fee of $45,000.00 per month, subject to adjustment for usage, during the times relevant hereto, as well as additional sums due for charges associated with the setup and continued maintenance of the Server (the "Monthly Charges").

14. Pursuant to § 12 of the Agreement, the Monthly Charges were to be paid on presentment, with a 15% late fee to be assessed on any balances over thirty days.

15. Further, pursuant to § 12 of the Agreement, RamSoft was allowed to suspend all services until all outstanding Monthly Charges are paid in full on five days' notice.

RamSoft (k)
SAC
3-4-2026

16.     Finally, pursuant to § 12 of the Agreement, TRG had seven days after receipt of any invoice for Monthly Charges to provide a written dispute of some or all of the same. It agreed that failing a timely dispute, TRG's "right to dispute such invoice shall be waived."

17.     TRG never once provided any remotely timely written dispute.

18.     Termination is provided for by § 19 of the Agreement, which permits termination on a material breach of the Agreement that is not cured within thirty days and for immediate termination of the Agreement if the Monthly Charges are not satisfied within thirty days of presentment.

19.     Fee-shifting for a successful suit is provided for by § 25 of the Agreement.

### B. TRG Breaches the Agreement

20.     RamSoft has sent monthly invoices to TRG, setting forth the Monthly Charges.

21.     TRG has routinely acknowledged these invoices and has never timely disputed any portion of any of the Monthly Charges.

22.     Despite this, TRG has serially failed to pay the Monthly Charges as they come due.

23.     As of the date this suit was initially filed, RamSoft is owed $978,804.00 (the "Non-Payment") for unpaid fees, accrued interest, and costs associated with attempting to collect the overdue amounts.

RamSoft (k)
SAC
3-4-2026

### C. TRG Offers Excuses & Demands Continued Services

24.  Throughout their relationship, TRG was serially unable to make the promised payments. For example, ~~on~~in a February 21, 2024, email to RamSoft's CEO Vijay Ramanathan, Lalaji said that TRG could not sustain more than a $10,000.00 payment based on current cash flow.

25.  ~~In~~Throughout late 2023, as reflected in correspondence dated December 8, 2023, TRG's CEO, Anand Lalaji, stated that TRG ~~said it was going to~~would resolve ~~the~~its outstanding balances ~~by obtaining~~through liquidity funding.

### D. TRG Supplies False Financials

26.  Upon information and belief, Lalaji as TRG's CEO and Stephens as TRG's CFO oversee and manage TRG's internal accounting systems, including its general ledger, expense records, accounts payable, outstanding liabilities, and contingent obligations. On further information and belief, Lalaji and Stephens participated in the preparation and review of the Financial Disclosures (defined below).

~~1.~~  On January 22, 2024, Lalaji distributed what he purported to be a draft ~~LOI~~*Letter of Intent* from Five Crowns Capital~~,~~ (the "FCC LOI")—which would provide sufficient liquidity to pay the outstanding balances due RamSoft~~,~~ to RamSoft's CEO Vijay Ramanathan and CFO Aaron Pelz.

~~26.~~27.  ~~In order to induce RamSoft to wait for this, or other financing to materialize,~~ The FCC LOI, as set forth below, was only obtained because TRG

provided what it said were its current financials.concealed its true financial position from Five Crowns.

27.28. On January 31, 2024, Joe Stephens of TRG, upon information and belief, with Lalaji's consent, involvement and direction, sent Pelz an email stating: "I expect for the [TRG] Balance Sheet to be complete by the end of the week. However, I have attached the 2023 quarterly P&L for your review. As illustrated, the Company's financial results are improving." That profit-and-loss statement (the "TRG P&L") shows an annual loss of $687,153.0080.

28.29. When making this representation that the financial results were improving, the Defendants did not tell RamsoftRamSoft that Lalaji's license had been suspended in Kentucky in 2023 for missing a brain tumor. Or that Lalaji's license had also been suspended in Virginia in 2023. The Defendants also failed to mention that as of February 2024, Lalaji's license in Louisiana was also on the verge of suspension (it was ultimately suspended that May). It is hard to say how TRG's financial results would be "improving" if the CEO is losing his licenselicenses in multiple states at athe same time.

2.      On information and belief, this P&L and associated email was sent at the behest of, and with the approval of, Lalaji.

29.30. On February 7, 2024, Joe Stephens of TRG , upon information and belief, with Lalaji's consent, involvement and direction, sent Pelz the balance sheetTRG Balance Sheet outlining TRG's year-end 2023 financial situation. (the

"TRG Balance Sheet" and together with the TRG P&L, the "Financial Disclosures").

It lists $13,067,570.60 ~~million~~ in liabilities, including Paycheck Protection Program

("PPP") loans, cash advances, notes, payroll owed, and tax liabilities.

~~3.    On information and belief, this balance sheet was sent at the behest of,~~

~~and with the approval of, Lalaji, TRG's CEO.~~

~~30.~~31. Neither ~~financial document~~of the Financial Disclosures disclosed any

liabilities ~~for refunds owed for~~associated with improperly billed services or unlawful

activities even though such liabilities would be current~~, i.e.,~~ meaning due and

payable ~~now~~at the time the Financial Disclosures were provided to RamSoft.

32.    The Financial Disclosures and the FCC LOI were not furnished

pursuant to any contractual duty under the Agreement but were instead voluntarily

provided in connection with Defendants' desire to influence RamSoft's commercial

decision regarding TRG's outstanding obligations, with the understanding that

RamSoft would evaluate and rely upon the completeness and accuracy of the

information in determining how to proceed.

**_E.    TRG Uses the False Financials to Secure Better Terms from RamSoft_**

~~31.~~33. In February ~~of~~ 2024, ~~based on these financials,~~ Lalaji negotiated a

restructuring ~~allowing~~with RamSoft (the "Modification"). Under the Modification,

TRG ~~to send~~would pay only $10,000.~~00~~ per month (the "Modification Payment") to

RamSoft until a liquidity event ~~(e.g.,~~ such as the Five Crowns ~~infusion)~~financing,

occurred; the. The amounts already accruing and owing under the Agreement were to be turnedconverted into convertible debt (the "Modification")..

34.    RamSoft agreed to the Modification in reliance on: (a) the Financial Disclosures; (b) Defendants' representations that TRG's financial condition was "improving"; and (c) the FCC LOI.

35.    At the time of the proposed Modification, and pursuant to §§ 12 and 19 of the Agreement, RamSoft was entitled to suspend services or terminate the Agreement due to TRG's non-payment. TRG had not disputed the Monthly Charges and remained in arrears.

36.    In reliance on the Financial Disclosures and the FCC LOI representing imminent liquidity, RamSoft refrained from exercising those rights and instead agreed to amend the Agreement, which remains in full force and effect, as potentially modified by the Modification.

32.37. TRG failed to make the required Modification payments timelyPayments or to secure financing. from Five Crowns or, upon information and belief, any other source.

33.38. RamsoftRamSoft repeatedly requested payment.

### E.F.    *The DoJ Investigation Comes to Light*

34.39. TRG couldn't secure financing because financing was a pipe-dream— all of the Defendants knew it while they were promising the same to RamsoftRamSoft.

35. 40. With their finances already precarious, on March 26, 2024, Lalaji and TRG entered into a stipulation with the U.S. Department of Justice, ("DoJ"), admitting that they had submitted millions of dollars' worth of improper claims related to radiology treatment.

36. 41. As a result of the foregoing conduct, Lalaji and TRG agreed to pay $2,678,387.21 to the federal government and another $421,612.79 to affected states., which represented some or all of the amounts that TRG knowingly and illegally charged these government agencies for services (collectively, the "Overcharge Liabilities").

37. 42. TRG and Lalaji agreed to pay $592,454.38 within fourteen business days of the effective date of the stipulation and quarterly payments of $160,456.38 starting on June 30, 2024.

38. 43. As a condition of their agreement with the Department of Justice, TRG and Lalaji averred that they "have reviewed their financial situation and warrant that they are solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I) and shall remain solvent following payment to the United States of the Settlement Amount."

4.      The problems with this settlement, and its timing, are myriad.

44.     The civil action giving rise to the DoJ settlement was filed under seal in 2019 and concerned billing practices that predated the transmission of the FCC LOI and the Financial Disclosures of January and February 2024. The action remained under seal during the period in which the proposed Modification was being evaluated,

and it was not unsealed until March 28, 2024. Accordingly, the existence and scope of the federal investigation were not discoverable through ordinary commercial diligence.

39.45. No ~~Ramsoft~~RamSoft officer, including Ramanathan, knew anything about the DoJ ~~investigation.~~lawsuit.

40.46. ~~On~~Upon information and belief, no ~~Ramsoft~~RamSoft employee knew anything about the DoJ ~~investigation~~lawsuit.

47.    ~~Moreover, Ramsoft would have no way of~~Upon information and belief, the existence, magnitude, and financial implications of the Overcharge Liabilities were reflected in TRG's internal records—materials exclusively within the knowledge and control of the Defendants.

41.48. Even had RamSoft discovered the existence of the DoJ lawsuit, assessing the ~~claims because did not have the experience~~Overcharge Liabilities would have required the review of internal billing data, clinical documentation, and accounting analyses that RamSoft could not access, audit, or independently evaluate. RamSoft lacked both the underlying records and the regulatory insight necessary to determine whether the ~~DoJ's claims~~Overcharge Liabilities were valid~~, or correspondingly, to conduct diligence into the events giving rise to the DoJ claim.~~.

42.49. Given TRG's otherwise precarious financial situation ~~based on the financial documents provided, Ramsoft~~as reflected in the Financial Disclosures, RamSoft would not have considered the Modification had it known that TRG was

facing~~carrying~~ the ~~additional DoJ liabilities~~Overcharge Liabilities because ~~the DoJ~~these liabilities increased TRG's ~~debtload~~debt load by at least 23.~~1~~%.

~~43.~~50. Because the ~~DoJ's claims~~Overcharge Liabilities were valid——as Lalaji and TRG admitted they were in the settlement———they were required to be appropriately recorded on ~~TRG's balance sheet~~the TRG Balance Sheet because TRG owed the money. ~~The failure to do so was fraudulent and material.~~

~~44.~~51. Alternatively, the ~~financials supplied to Ramsoft received~~Financial Disclosures showed very little cash on hand, making it hard to fathom how TRG would be capable of meeting the burdens visited by the DoJ settlement if the ~~financials supplied~~Financial Disclosures were true and correct. Accordingly, it is a fair inference that the ~~financials that TRG provided~~Financial Disclosures were false.

### G. ~~Finally, there is legitimate reason~~*The Five Crowns Fraud Comes to* ~~believe~~*Light*

52.    The Overcharge Liabilities were also not disclosed to Five Crowns, meaning that the ~~Five Crowns commitment was obtained through fraud~~FCC LOI was procured through incomplete or materially misleading financial information. By transmitting the FCC LOI to RamSoft and presenting it as ~~well. Assuming that the~~ evidence of imminent third-party financing, the Defendants ~~were~~ induced RamSoft to rely upon the prospect of liquidity and enter into the Modification despite knowing that the supposed liquidity was entirely illusory, having been predicated on

deliberate misrepresentations and fraudulent omissions that rendered the financing functionally unattainable.

53.    Had Five Crowns known about the Overcharge Liabilities, it would have been a "deal killer," in the ~~habit of hiding the DoJ~~ words of Five Crowns Capital's managing director, Chris Taylor.

54.    Recognition of its deal-killer status is presumably why TRG supplied Five Crowns Capital with a list of pending lawsuits and liabilities~~, as~~ that entirely omitted any reference to the DoJ lawsuit or the Overcharge Liabilities, which per the DoJ settlement, Lalaji knew were due and owing at the time he sent the information to Five Crowns.

~~45.~~55. Defendants knew or should have known that the Five Crowns financing was unattainable because they ~~did~~ had concealed the very liabilities that would have prevented Five Crowns from proceeding—the very liabilities that they also had a duty to disclose to the Plaintiff~~, these were unlikely to have been shared with Five Crowns either~~.

~~46.~~56. ~~On information and belief, had the Defendants been honest with Five Crowns, there is no way~~Despite knowing that Five Crowns ~~would have signaled any interest. The Defendants accordingly knew~~ was unaware of the Overcharge Liabilities, and thus knowing that the Five Crowns ~~communication was procured through fraud and provided~~letter did not accurately reflect the ~~same~~viability of financing, Defendants presented it to ~~Ramsoft~~Plaintiff anyway, with the

intentintention that RamsoftPlaintiff would rely on it. in providing the Modification to the Agreement.

*TRG's*

### H.     *RamSoft Would Not Have Agreed To The Modification If These Facts Were Known*

57.     Had RamSoft known of the Overcharge Liabilities or that the FCC LOI was based on a material misrepresentation of TRG's underlying financial circumstances, RamSoft would not have agreed to the Modification to the Agreement.

### ~~F.~~I.     TRG *Continues to Shirk its Obligations.*

~~47.~~58. Since August 1, 2024, TRG has not made the requisite payments.

~~48.~~59. Since August 1, 2024, ~~Ramsoft~~RamSoft has made repeated requests for payment of all outstanding invoices.

## COUNT I: BREACH OF CONTRACT
### (Against TRG)

~~49.~~60. Plaintiff incorporates by reference the allegations in paragraphs 1 through ~~52~~59 above.

~~50.~~61. Contracts, the Agreement and the TRG LOI, exist between TRG and RamSoft because they called for the doing or not doing of some specified thing, as described herein.

~~51.~~62. Consideration for the TRG LOI and Agreement exists and both TRG and ~~Ramsoft~~RamSoft assented to the same.

~~52.~~63. RamSoft has performed all of its obligations under the Agreement.

13

RamSoft (k)
SAC
3-4-2026

53.64. TRG breached the terms of the Agreement.

54.65. As a result of the breach, RamSoft suffered damages in the amount of the Non-Payment plus applicable pre- and post-judgment interest at 15%, costs and fees, where such damages are provable to a reasonable certainty.

55.66. The damages flowed from the TRG's breach.

### COUNT II: NEGLIGENT MISREPRESENTATION
### (Against All Defendants)
### (Pled in the Alternative)

56.67. Plaintiff incorporates by reference the allegations in paragraphs 1 through 5259 above.

5. By way of further explanation for this claim, the Plaintiff conducted diligence with respect to the Modification, asking for financials and for information regarding capital commitments. It evaluated the same.

6. These documents described a company in jeopardy. Had the financials included millions in that were due to be refunded — as they should have — it would have eliminated any business case for the Modification. Ramsoft would not have agreed to it.

7. Moreover, the Defendants knew or should have known that the fraudulent charges should have been included on the financials.

8. "Defendants knew that they could not bill Federal healthcare programs for the radiology services unless a U.S. based and licensed radiologist reviewed all of the images associated with the scan [and] they were prohibited by Federal

14

RamSoft (k)
SAC
3-4-2026

healthcare program rules from submitting claims for reimbursement for radiology services if the radiologist listed as the rendering provider on the claim for reimbursement had not actually rendered the services. Nonetheless, on numerous occasions, Defendants submitted claims to Federal healthcare programs where the radiologist who reviewed and interpreted the imaging was someone other than the individual listed on the claim." (DoJ Settlement of 3/27/24.)

9. The Defendants knew "The Radiology Group received reimbursements from the Federal healthcare programs for teleradiology service claims that did not comply with those programs' billing rules." (Id.)

10. In short, the Defendants knew or should have known that they had substantial liabilities associated with unlawful conduct. Yet they did not disclose it.

11. The Defendants also failed to disclose that the future was not rosy given that Lalaji had lost his license in two states and was well on his way in a third.

12. Finally, it is reasonable to infer—given their precarious financial state—that the Defendants did not disclose any of this information to 5 Crowns, either. Yet, they used the expression of interest from 5 Crowns, an expression that would have been secured on false terms had this information not been provided, as further inducement for the Plaintiff to enter the Modification.

13. Lalaji, on information and belief, endorsed all the communications with the Plaintiff.

15

RamSoft (k)
SAC
3-4-2026

14. Lalaji distributed the Five Crowns memo to the Plaintiff.

15. Joe Stephens, acting on Lalaji's behest on information and belief, distributed the financials described herein — financials that omitted material liabilities and that were, in turn, materially misleading. He also suggested that revenue was on the upswing, despite Lalaji's abysmal prospects.

16. All the misrepresentations were made on behalf of TRG.

17. Accordingly, the Defendants had a pecuniary duty to provide accurate information.

18. The Defendants represented false material facts as true, to wit TRG's balance sheet — which did not provide for a known liability — and by a fraudulent cash flow statement that cannot justify the warranty provided to the U.S. Department of Justice. In addition, the Defendants' statements that a liquidity transaction was possible were patently false, given the circumstances.

68. The Defendants represented false material facts as true. Specifically, (A) the Defendants supplied a balance sheet, the TRG Balance Sheet, that was materially false because it did not disclose the Overcharge Liabilities, (B) the Defendants supplied the FCC LOI as evidence of near-term financing despite the fact that it was obtained under false pretenses and thus did not reflect any true intention to fund or prospect of funding and (C) the prospects related by Defendants in relation to the TRG P&L were clearly unjustified.

16

RamSoft (k)
SAC
3-4-2026

57.69. The Defendants failed to exercise reasonable care and competence in obtaining or communicating this information.

70.    In each case, Plaintiff was a foreseeable recipient, indeed the intended recipient, of this false information supplied by the Defendants.

71.    Plaintiff relied on this false information in entering into the Modification.

72.    Plaintiff's reliance was reasonable. Plaintiff understood that TRG faced significant liabilities and liquidity constraints, but relied on the Financial Disclosures and the FCC LOI as presenting a complete and accurate statement of TRG's material financial obligations and prospective liquidity; in short, they demonstrated a path, albeit narrower than preferable, to recover the funds. Plaintiff was unaware of the Overcharge Liabilities that materially increased TRG's debt load and frustrated its financing prospects—with the Overcharge Liabilities, the path was non-existent. Had that exposure been disclosed, Plaintiff would not have proceeded with the Modification.

73.    Plaintiff exercised reasonable diligence by requesting and reviewing the Financial Disclosures and FCC LOI. The undisclosed governmental exposure was not discoverable through ordinary commercial diligence, as the underlying civil action remained under seal and the relevant billing records and contingent liability analyses were exclusively within Defendants' knowledge and control.

74.    All the misrepresentations were made on behalf of TRG.

RamSoft (k)
SAC
3-4-2026

75.     RamSoft reasonably relied on the representation or omission and suffered ~~a pecuniary~~an economic injury, to wit the losses suffered by the acceptance of reduced payments and the losses associated with the conversion of its then-current payments due to convertible debt.

76.     Because Plaintiff has alleged facts to support a specific false representation on which the Plaintiff justifiably relied, the economic loss ~~caused by such justifiable reliance~~ rule does not bar this claim.

~~58.~~77. Moreover, the Agreement did not call for Defendants to supply this information. Instead, Defendants supplied this information in the course of their business, profession, employment, and in a transaction in ~~the amount of the Non-Payment plus applicable pre- and post-judgment interest at 15%, costs and fees~~which they had a pecuniary interest. Under these circumstances, Defendants undertook an independent duty, of reasonable care and competence to Plaintiff, which relied on that information in circumstances in which Defendants were manifestly aware of the use to which the information was to be put and intended that it be so used, *i.e.*, the decision to restructure and forbear.

78.     Finally, an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefore, as well as when the officer directed the particular act to be done or participated or cooperated therein. Lalaji and Stephens took part in this tort.

## COUNT III: FRAUDULENT INDUCEMENT
### (Against All Defendants)
### (Pled in the Alternative)

RamSoft (k)
SAC
3-4-2026

59.79. Plaintiff incorporates by reference the allegations in paragraphs 1 through 5259 above.

19.    By way of further explanation for this claim, the Plaintiff conducted diligence with respect to the Modification, asking for financials and for information regarding capital commitments. It evaluated the same.

20.    These documents described a company in jeopardy. Had the financials included millions in that were due to be refunded – as they should have – it would have eliminated any business case for the Modification. Ramsoft would not have agreed to it.

21.    Moreover, the Defendants knew or acted with reckless disregard for truth by omitting these debts from the financials.

80.    The Defendants knowingly (or alternatively, with reckless disregard for the truth) represented false material facts as true. Specifically, (A) the Defendants supplied a balance sheet, the TRG Balance Sheet, that was materially false because it did not disclose the Overcharge Liabilities, (B) the Defendants supplied the FCC LOI as evidence of near-term financing despite the fact that it was obtained under false pretenses and thus did not reflect any true intention to fund or prospect of funding and (C) the prospects related by Defendants in relation to the TRG P&L were clearly unjustified.

RamSoft (k)
SAC
3-4-2026

81.     The falsity of these representations – and Defendants' knowledge of the underlying liabilities – is supported by the Department of Justice settlement dated March 26, 2024 (the "DOJ Settlement").

60.82. "Defendants knew that they could not bill Federal healthcare programs for the radiology services unless a U.S.-based and licensed radiologist reviewed all of the images associated with the scan [and] they were prohibited by Federal healthcare program rules from submitting claims for reimbursement for radiology services if the radiologist listed as the rendering provider on the claim for reimbursement had not actually rendered the services. Nonetheless, on numerous occasions, Defendants submitted claims to Federal healthcare programs where the radiologist who reviewed and interpreted the imaging was someone other than the individual listed on the claim." (DoJ Settlement of 3/2726/24.)

61.83. The Defendants knew "The Radiology Group received reimbursements from the Federal healthcare programs for teleradiology service claims that did not comply with those programs' billing rules."," to wit, the Overcharge Liabilities. (Id.)

22.     In short, the Defendants knew or acted with reckless disregard for the truth when they failed to disclose the substantial liabilities associated with unlawful conduct on their financials.

RamSoft (k)
SAC
3-4-2026

23. ~~The Defendants knew or acted with reckless disregard for the truth when they failed to disclose that the future was not rosy given that Lalaji had lost his license in two states and was well on his way in a third.~~

24. ~~Finally, it is reasonable to infer — given their precarious financial state — that the Defendants did not disclose any of this information to Five Crowns, either. Yet, they used the expression of interest from Five Crowns, an expression that would have been secured on false terms had this information not been provided, as further inducement for the Plaintiff to enter into the Modification.~~

25. ~~Lalaji, on information and belief, endorsed all the communications with the Plaintiff.~~

26. ~~Lalaji distributed the 5 Crowns memo to the Plaintiff.~~

27. ~~Joe Stephens, acting on Lalaji's behest on information and belief, distributed the financials described herein — financials that omitted material liabilities and that were, in turn, materially misleading. He also suggested that revenue was on the upswing, despite Lalaji's abysmal prospects.~~

~~62.~~1. ~~All the misrepresentations were made on behalf of TRG.~~

28. ~~By making false statements and omitting material facts, the Defendants actively concealed and prevented RamSoft from discovering the truth and failed to speak when having a duty to do so.~~

RamSoft (k)
SAC
3-4-2026

21

29. The Defendants made the false representations or omissions with knowledge or belief that the representations or omissions were false, or with reckless indifference to the truth, and the intention to induce the plaintiff to act or refrain from acting based on the representation or omission.

30. RamSoft reasonably relied on these representations and/or omissions in entering into the Modification.

31. RamSoft suffered damage as a result of its reliance on an amount greater than or equal to the Non-Payment.

84. The fraud was From the DOJ Settlement, it is reasonable to infer that Lalaji, as TRG's Chief Executive Officer and an individual defendant who was a signatory to the DOJ Settlement that resolved claims pending since 2019, possessed actual knowledge of the Overcharge Liabilities and the preceding improper billing as of January 22, 2024, when he distributed the FCC LOI to RamSoft.

85. Despite knowing (or alternatively acting with a reckless disregard for the truth) that Five Crowns was unaware of those liabilities—and therefore that the FCC LOI did not accurately reflect the true viability of the proposed financing—Lalaji nevertheless transmitted the FCC LOI to RamSoft as representing near-term liquidity capable of addressing TRG's outstanding balances, a representation Lalaji knew was materially false in

light of the fact that he had not disclosed the Overcharge Liabilities or DoJ litigation to Five Crowns.

86.    Similarly, Stephens, who served as TRG's Chief Financial Officer during all times material to this action, upon information and belief had access to TRG's internal accounting records and participated in the preparation and transmission of TRG's financial statements. Given that the federal action underlying the DoJ settlement had been pending since 2019 and was resolved within weeks of the January–February 2024 Financial Disclosures, it is reasonable to infer that Stephens knew of the Overcharge Liabilities when he transmitted those disclosures, or at a minimum acted with reckless disregard.

87.    Upon information and belief, Lalaji oversaw and approved the transmission of the TRG Balance Sheet.

88.    All the misrepresentations were made on behalf of TRG with an intention, and in fact for the purpose of, inducing Plaintiff to enter into the Modification.

89.    RamSoft accepted the Modification relying on, indeed based on, these misrepresentations.

90.    The Agreement did not impose a duty to disclose the Financial Disclosures or FCC LOI, and the same were not provided pursuant to the Agreement.

91.    The Financial Disclosures and FCC LOI were voluntarily provided in the course of Defendants' business and for the specific purpose of

influencing Plaintiff's decision whether to exercise its contractual rights to suspend services or terminate the Agreement while TRG remained in arrears, and whether instead to proceed with the proposed Modification, which was financially significant to TRG. Defendants intended that these statements be acted upon by Plaintiff.

92.    Defendants did owe RamSoft an independent common-law duty not to commit fraud. This duty exists regardless of any contractual relationship between the parties and arises from the fundamental principle that parties engaged in commercial transactions must not intentionally deceive one another through material misrepresentations or fraudulent concealment.

93.    This independent duty satisfies both the fraud exception to the economic loss rule and the requirement that tort claims arise from duties outside the contract. The two doctrines are distinct but complementary: the economic loss rule addresses whether tort recovery is available given the existence of a contract; the independent duty requirement addresses whether the alleged wrong constitutes a breach of contract dressed up as a tort. Here, both tests are satisfied because Defendants' duty not to commit fraud by concealing material information arises from statute (O.C.G.A. § 23-2-53), common law (*e.g.*, Rest. Torts 2nd § 552 first adopted in Georgia by *Robert & Co. Assocs. v. Rhodes-Haverty P'ship*, 300 S.E.2d 503, 504 (Ga. 1983); *see also Clean2Go Servs., LLC v. IRT Living, LLC*, 2025 WL 972925, at *3 (N.D. Ga. Mar. 28, 2025); *Jaramillo v. Taurus Int'l Mfg., Inc.*, 2024 WL 5305081, at *7

(M.D. Ga. Sept. 27, 2024); *Sowa v. Mercedes-Benz Grp. AG*, 2024 WL 5290887, at *33 (N.D. Ga. Dec. 31, 2024) (internal quotations and alterations omitted; emphasis added); *Monopoli v. Mercedes-Benz USA, LLC*, 2022 WL 409484, at *15 (N.D. Ga. Feb. 10, 2022); *Holloman v. D.R. Horton, Inc.*, 524 S.E.2d 790, 797 (Ga. App. 1999)), and the particular circumstances of this transaction—not from any provision of the Agreement or Modification.

94.     For its part, RamSoft was not aware of the Overcharge Liabilities or the omission of the same from the FCC LOI documents.

95.     RamSoft justifiably relied on these representations in entering into the Modification. Ramsoft understood that TRG faced significant liabilities and liquidity constraints, but relied on the Financial Disclosures and the FCC LOI as presenting a complete and accurate statement of TRG's material financial obligations and prospective liquidity; in short, they demonstrated a path, albeit narrower than preferable, to recover the funds. Plaintiff was unaware of the Overcharge Liabilities that materially increased TRG's debt load and frustrated its financing prospects—with the Overcharge Liabilities, the path was non-existent. Had that exposure been disclosed, Plaintiff would not have proceeded with the Modification.

96.     Ramsoft exercised reasonable diligence by requesting and reviewing the Financial Disclosures and FCC LOI. The undisclosed governmental exposure was not discoverable through ordinary commercial diligence, as the underlying civil action remained under seal and the relevant

billing records and contingent liability analyses were exclusively within Defendants' knowledge and control.

97.    As a result of Defendants' misrepresentations and RamSoft's reliance thereon, RamSoft suffered losses occasioned by the acceptance of reduced payments and the losses associated with the conversion of its then-current payments due to convertible debt.

63.98. Accordingly, Defendants' conduct was willful and constituted gross, oppressive, and aggravated fraud and/or involved a breach of trust or confidence.

64.99. RamSoft therefore requests that the Modification be declared void and/or rescinded, and that it be providedawarded rescissory damages in an amount proven at trial as well as punitive damages in an amount proven at trial,. Alternatively, RamSoft reasonably relied on the representation or alternatively, actual damagesomission and suffered a pecuniary loss caused by such justifiable reliance in the amount of the Nonpaymentat least the Non-Payment plus applicable pre- and post-judgment interest at 15%,. costs and fees as well as punitive damages in an amount to be determined at trial..

### COUNT IV: DECLARATORY JUDGEMENTJUDGMENT
### (Against TRG)

65.100.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 5259 above.

66.101.    An actual controversy exists between TRG and RamSoft concerning the obligations that TRG has to tender payments on a go-forward basis, and RamSoft's right to terminate services. TRG has insisted that it keepmust retain access to the platform and has stated that any refusal to do so will result in TRG blaming RamsoftRamSoft for any poor outcomes associated with any suspension.

67.102.    As alleged previously, TRG is not making payments as they come due.

68.103.    Under Delaware law, a party's material breach of a contract relieves the non-breaching party of its duty to perform.

69.104.    Under the Agreement, the Monthly Charges are due and owing each month and must be paid.

70.105.    A failure to pay the Monthly Charges permits RamSoft to terminate the Agreement within five days of non-payment.

71.106.    The Modification is invalid and of no force and effect.

72.107.    RamSoft, therefore, seeks a declaratory judgment that: a) TRG 'sTRG's failure to pay the Monthly Charges constitutes a material breach; b) RamSoft is entitled to cease performance, including but not limited to, by no longer providing access to the Server; and c) RamSoft's cessation of performance, if it occurs, does not constitute a breach of any contract between TRG and RamSoft.

**COUNT V: ConspiracyCONSPIRACY**
**(All Defendants)**

27

RamSoft (k)
SAC
3-4-2026

73.108.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 3259 above, as well as Count III.

74.109.    The Defendants formed a confederation or combination of two or more persons.

75.110.    Unlawful acts⸻torts⸻as set forth in this Complaint were done in furtherance of this conspiracy.

76.111.    The Defendants caused actual damage to RamSoft in the amount of the Non-Payment plus applicable pre- and post-judgment interest at 15%,. costs and fees as well as punitive damages in an amount to be determined at trial.

### COUNT VI: Quantum MeruitQUANTUM MERUIT
### (TRG & Lalaji)

77.112.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 3259 above.

78.113.    In the event that there is no enforceable contract covering Ramsoft'sRamSoft's provision of services, this count is pled in the alternative to capture the value of the services provided, which were used by Lalaji and TRG.

79.114.    The services described in this Complaint were used by TRG.

80.115.    The services described in this Complaint were used by Lalaji to treat his patients.

81.116.    At the request of TRG and/or Lalaji, RamSoft has provided services valuable to TRG and/or Lalaji, at the request of either or both TRG or Lalaji.

82.117.     TRG and/or Lalaji knowingly accepted the valuable services provided by RamSoft.

83.118.     RamSoft expected compensation at the time that it provided the services to TRG and/or Lalaji, and both TRG and/or LaljiLalaji knew that such compensation was expected.

84.119.     In providing the services to TRG and/or Lalaji, RamSoft has conferred a benefit on TRG and/or Lalaji, and failure to compensate RamSoft for the services it provided would be unjust.

85.120.     The just and reasonable compensation to RamSoft for the services provided is, at a minimum, the Non-Payment, which exceeds $75,000.

## COUNT VII: BREACH OF CONTRACTUAL OBLIGATIONS OF GOOD FAITH & FAIR DEALING
### (Against TRG)

86.121.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 3259 above.

87.122.     A contract, the Agreement, exists between TRG and RamSoft.

88.123.     RamSoft has performed all of its obligations under the Agreement.

89.124.     TRG breached the implied covenants of good faith and fair dealing inherent in every contract, including the Agreement, by arbitrarily or unreasonably preventing RamSoft from receiving the benefits of the contract.

RamSoft (k)
SAC
3-4-2026

90.125.    As a result of the breach, RamSoft suffered damages in the amount of the Non-Payment plus applicable pre- and post-judgment interest at 15%, costs and fees, where such damages are provable to a reasonable certainty.

91.126.    The damages flowed from the TRG 'sTRG's breach.

## COUNT VIII: LEGAL FEES
### (All Defendants)

92.127.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 5259 above.

93.128.    By and through their conduct, Defendants have acted in bad faith, been stubbornly litigious and have caused Plaintiff unnecessary trouble and expense.

94.129.    Accordingly, RamSoft is entitled to recover the expenses of litigation from all Defendants including reasonable legal fees.

## COUNT IX: UNJUST ENRICHMENT
### (TRG & Lalaji)

95.130.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 5259 above.

96.131.    In the event that there is no enforceable contract covering Ramsoft'sRamSoft's provision of services, this count is pled in the alternative to capture the value of the services provided, which were used by Lalaji and TRG.

97.132.    The services described in this Complaint were used by TRG.

98.133.    The services described in this Complaint were used by Lalaji to treat his patients.

30

RamSoft (k)
SAC
3-4-2026

99.134.    TRG and/or Lalaji have been enriched and RamSoft impoverished because he RamsoftRamSoft has conferred a benefit on the TRG and/or Lalaji, the Defendants knew of the benefit and accepted and/or retained the same.

100.135.    There is a relation between the enrichment and impoverishment.

101.136.    There was no justification for the events because the circumstances are such that it would be inequitable for the TRG and/or Lalaji to retain the benefit without paying for it.

## JURY TRIAL DEMAND

A jury trial is demanded on all issues so triable.

WHEREFORE, RamSoft respectfully requests that this Court enter judgment in its favor and against Defendants as follows:

A.    A. **Count I.** Awarding, against TRG: (1) compensatory and punitive damages in an amount to be determinedproven at trial, but not less than the outstanding Non-Payment from either or both of TRG or Lalaji, jointly and severally;

B.    Awarding; (2) contractual late fees; (3) pre- and post-judgment interest at the contractual rate of 15% APR;

Awardingper annum; and (4) RamSoft its costs and reasonable attorneys' fees incurred in this action;.

C.    Entering a declaratory judgment as described in Count IV above;

RamSoft (k)
SAC
3-4-2026

~~Recovery from the Defendant additional~~B. **Count II**. Awarding, against TRG, Lalaji, and Stephens, jointly and severally: (1) compensatory damages ~~for unjust enrichment~~in an amount to be proven at trial ~~and measured from~~, but not less than the Non-Payment; (2) pre- and post-judgment interest; and (3) RamSoft its costs and fees.

C. **Count III**. Entering an order (1) declaring the Modification void and/or rescinded and awarding, against TRG, Lalaji, and Stephens, jointly and severally, rescissory damages in an amount to be proven at trial, but not less than the ~~standpoint of~~ Non-Payment; OR, in the alternative, (2) awarding, against TRG, Lalaji, and Stephens, jointly and severally: (a) compensatory damages not less than the Non-Payment; (b) punitive damages; (c) pre- and post-judgment interest; and (d) RamSoft its costs and fees.

D. **Count IV**: Entering a declaratory judgment against Defendant TRG that (1) TRG's failure to pay the Monthly Charges constitutes a material breach of the Agreement; (2) RamSoft is entitled to immediately cease performance, including by no longer providing access to the Server; (3) RamSoft's cessation of performance, if it occurs, does not constitute a breach of any contract between TRG and RamSoft; and (4) the Modification is invalid and of no force and effect.

E. **Count V**: Awarding, against Defendants TRG, Lalaji, and Stephens, jointly and severally: (1) actual damages in an amount to be proven at trial, but not less than the Non-Payment; (2) punitive damages in an amount to be determined at trial; (3) pre- and post-judgment interest; and (4) RamSoft its costs and fees.

RamSoft (k)
SAC
3-4-2026

F. **Count VI**: Awarding, against Defendants TRG and Lalaji, jointly and severally, just and reasonable compensation for the value of the services RamSoft provided to, and which were accepted by, Defendants TRG and Lalaji, in an amount to be proven at trial, but not less than the Non-Payment.

G. **Count VII**: Awarding, against Defendant TRG: (1) compensatory damages in an amount to be proven at trial, but not less than the Non-Payment; (2) pre- and post-judgment interest at 15% per annum; and (3) RamSoft its costs and fees.

H. **Count VIII**: Awarding, against Defendants TRG, Lalaji, and Stephens, jointly and severally, RamSoft its reasonable attorneys' fees and expenses of litigation.

I. **Count IX**: Awarding, against Defendants TRG and Lalaji, jointly and severally, restitution and disgorgement damages measured by the value of the benefit inequitably conferred upon ~~the Defendant; and~~and retained by Defendants TRG and Lalaji, in an amount to be proven at trial.

~~Granting~~

J. **As to All Counts Generally**: Awarding such other and further relief, at law and in equity, as ~~the~~this Court deems just and proper.

~~[Remainder of Page Intentionally Left Blank]~~

33

Dated: March ~~17, 2025~~4, 2026.

/s/ Mark Billion
Mark Billion (GA Bar No. 768687)
BILLION LAW
110 Traders Cross
Bluffton, SC 29909 Tel: 302.428.9400
markbillion@billionlaw.com

*Counsel for Plaintiff*

34

RamSoft (k)
SAC
3-4-2026