IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RamSoft USA, Inc.,<br><br>               Plaintiff,<br><br>v.<br><br>The Radiology Group LLC, Anand Lalaji, Joe Stephens,<br><br>               Defendants. | CIVIL NO. 1:24-cv-04821-TRJ |

## DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT

Plaintiff RamSoft USA, Inc.'s Second Amended Complaint ("SAC") [Doc. 68] – its third attempt to allege viable claims with the benefit of three prior briefs filed by Defendants illuminating their legal shortcomings – fails to cure inherent defects in the claims upon which Plaintiff is attempting to proceed in this litigation, and, despite the amended allegations, those defective claims should still be dismissed for failure to state a claim upon which relief can be granted. In its third attempt at stating its case, Plaintiff still tries to create causes of action that do not exist in order to expand what should otherwise be a simple contract-based action into one in which Plaintiff accuses Defendants The Radiology Group LLC ("TRG"), Anand Lalaji ("Dr. Lalaji"), and Joe Stephens ("Mr. Stephens") of other wrongs that may sound serious on the surface but on further examination are wholly meritless. Plaintiff's intentions are clear – it wishes to avoid the problems it will face in

proceeding solely on the contract claims at the heart of its case by diverting attention to facts that it believes cast Defendants in a negative light. The problem is, however, that simply making such accusations does not render them proper under the governing law. As explained below, Plaintiff's tort claims fail to state actionable claims against any of the Defendants, and its contract-alternative theories cannot proceed against Dr. Lalaji individually.[1] The Court should dismiss all claims asserted against Dr. Lalaji, and Counts II, III, and V against TRG, with prejudice.

## I.  STATEMENT OF FACTS[2]

Plaintiff is a software developer organized in Delaware that created a cloud-based picture archiving and communication software system for use in the medical field and particularly by radiology practices. [Doc. 68 ¶¶ 1, 8.] TRG is a radiology and teleradiology business with its principal place of business in Georgia; Dr. Lalaji, a Georgia resident, is TRG's chief executive officer ("CEO"); and Mr. Stephens, also a Georgia resident, was formerly affiliated with TRG as its Chief Financial Officer ("CFO"). [*Id.* ¶¶ 2–4, 9, 28.]

Plaintiff and TRG (collectively, the "Companies") entered into a letter of intent in July 2019 ("LOI") pertaining to Plaintiff's provision of services to TRG,

---

[1]     The bases for dismissal of Dr. Lalaji apply equally to Mr. Stephens.

[2]     The facts set forth herein are drawn directly from the Complaint, as amended, which the Court must accept as true on a motion to dismiss such as this. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002).

which contemplated billing on an as-used basis payable monthly. [*Id.* ¶ 10.] Four

years later, in June 2023, the Companies executed a "PowerServer Sales

Agreement." (the "Agreement").[3] [*Id.* ¶¶ 11–12.]

TRG struggled to make payments to Plaintiff, and the Companies negotiated

a "restructuring" in February 2024, which Plaintiff refers to as a "Modification." [*Id.*

¶¶ 24, 33–34.] As part of those negotiations, TRG shared specific details about its

challenging financial position, including that TRG's cash flow limited it to paying

at most $10,000 per month to Plaintiff, that TRG's financials reflected a $687,153

loss during the prior year, and that TRG had more than $13 million in liabilities on

---

[3]     Notably, neither the LOI nor the PowerServer Sales Agreement is attached to
the Complaint or has otherwise been filed on the docket. Although not directly
relevant to this Motion, Defendants contend that there is no enforceable contract
between the Parties because, among other things, the LOI expired on its terms and
the PowerServer Sales Agreement did not reflect a meeting of the minds on all
necessary terms. These defects may explain why Plaintiff chose not to file them with
the FAC or SAC, even after these issues were pointed out at least twice in prior
challenges to the sufficiency of Plaintiff's claims (Defendants' Motion for Judgment
on the Pleadings [Doc. 30] and Defendants' Motion to Dismiss the FAC [Doc. 41]).
        Plaintiff contended in its Response to Defendants' Motion to Dismiss the FAC
that Defendants must have a copy of the Agreement in order to challenge its validity
and should have included such with the Motion to Dismiss its FAC. [Doc. 50 at 3.]
Plaintiff confuses the parties' respective burdens; under plain Georgia law, Plaintiff
"has the burden of pleading and proving the existence of a valid contract." *Eastview
Healthcare, LLC v. Synertx, Inc.*, 674 S.E.2d. 641, 646 (Ga. Ct. App. 2009). It is not
Defendants' burden to produce evidence disproving the validity of the Agreement.
Furthermore, although Defendants maintain that the Agreement is invalid and are
prepared to prove such at a later stage of litigation, Plaintiff's allegation that the
Agreement was a valid contract is accepted for purposes of Defendants' present
Motion. *See FindWhat Inv. Grp.*, 658 F.3d at 1296.

the books at that time. [*Id.* ¶¶ 24, 28, 30.] TRG also shared a draft, non-binding LOI from Five Crowns Capital ("Five Crowns"), outlining a prospective deal that, if consummated, would provide sufficient funds to pay TRG's outstanding obligations to Plaintiff ("Five Crowns Proposed Liquidity Deal"), and stated that it believed its financials were improving. [*Id.* ¶¶ 27–28.] With that information in hand, Plaintiff agreed to the "Modification," setting monthly payments from TRG to Plaintiff at $10,000 per month "until a liquidity event…occurred," effectively re-amortizing the amounts that Plaintiff claimed were due but without superseding the original Agreement. [*Id.* ¶¶ 33–36.] According to Plaintiff, TRG failed to either make the negotiated payments or obtain financing thereafter. [*Id.* ¶ 37.]

Dr. Lalaji was not a party to any of the agreements alleged by Plaintiff – the LOI, the Agreement, or the Modification (nor was Mr. Stephens). [*Id.* ¶¶ 10–11, 13, 33.] Plaintiff never alleges it provided services directly to Dr. Lalaji in his individual capacity (apart from his role within TRG), that it had a contract with Dr. Lalaji, or that it expected payment from Dr. Lalaji individually for the services it provided to TRG. [*See id.*] Dr. Lalaji was acting as TRG's CEO and Mr. Stephens was acting as TRG's CFO in all actions they took as alleged by Plaintiff, and Plaintiff alleges that TRG alone breached the Agreement by failing to make the promised payments. [*Id.* ¶¶ 20–22, 24, 26–28, 30, 33–36.] All allegations pertaining to the alleged payment

4

obligation reference only TRG as the obligor, recipient of all payment requests, and defaulting party. [*Id.* ¶¶ 10–11, 13, 20–22, 35, 51.]

While TRG was very forthcoming with Plaintiff about its precarious financial situation [*id.* ¶¶ 24, 28, 30, 44.], TRG did not specifically disclose the pendency of the U.S. Department of Justice ("DOJ") *qui tam* case that had been pending since 2019 (the "DOJ Case"), either to Plaintiff or to Five Crowns. [*Id.* ¶ 52.] It had been filed and remained under seal, at the relator's rightful election, for the next ~five years, until unsealed to the public on March 27, 2024. *U.S. ex rel. Lynes & Zuckerman v. The Radiology Group et al.*, No. 1:19-cv-3542, Doc. 15 at 1 & Doc. 14 at 2 (S.D.N.Y 2019). Approximately one month *after* the Companies negotiated the Modification described above, TRG and Dr. Lalaji agreed to the entry of a consent judgment as part of a settlement with the DOJ (by which time the case was made public). [*Id.* ¶ 40.]; *see also U.S. ex rel. Lynes & Zuckerman*, No. 1:19-cv-3542, Docs. 16, 18.

Plaintiff initiated this lawsuit on October 24, 2024 [Doc. 1], and, after Defendants challenged its initial Complaint via a Motion for Partial Judgment on the Pleadings filed March 16, 2025 [Doc. 30], Plaintiff sought and obtained permission to amend, filing the FAC on March 28, 2025 [Doc. 36]. Defendants filed a Motion to Dismiss the FAC, and in its response on the merits, Plaintiff suggested that instead of dismissal, it be permitted leave to amend a second time. [Docs. 41, 50 at 24–25.]

The Court ordered Plaintiff to amend again and denied Defendants' Motion to Dismiss as moot. [Doc. 66.] Plaintiff then filed its SAC, adding some additional allegations but, as explained below, failing to correct the inherent defects in its claims. [*Compare* Doc. 36 *with* Doc. 68.] Accordingly, in the instant Motion, Defendants once again seek dismissal of Plaintiff's defective Counts II (negligent misrepresentation),[4] III (fraudulent inducement), and V (conspiracy) in their entirety and of Counts VI (quantum meruit), IX (unjust enrichment) and VIII[5] as to Dr. Lalaji individually, resulting in Dr. Lalaji's dismissal as a party-defendant.

## II.    ARGUMENT AND CITATION OF AUTHORITIES

### A. <u>Legal Standard for Motion to Dismiss.</u>

The familiar pleading standards set forth in the Supreme Court's seminal cases *Ashcroft v. Iqbal* and *Bell Atl. Corp. v. Twombly* govern the viability of Plaintiff's claims, pursuant to which "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

---

[4]    Plaintiff does not request relief as to Count II separately but appears to request the same damages with respect to its alternative Counts II and III in the single paragraph concluding Count III. [Doc. 68 ¶ 55.]

[5]    Count VIII seeks recovery of attorneys' fees from Defendants, but because all counts asserted against Dr. Lalaji individually are due to be dismissed, there is no basis on which Plaintiff's claim for attorney's fees can be pursued so it must be dismissed as well. *Akkad Holdings*, 2021 WL 5961854, at *9 (citing *McCalla Raymer, LLC v. Foxfire Acres, Inc.*, 846 S.E.2d 404, 413 (Ga. Ct. App. 2020) (an attorneys' fee claim is "derivative" so it cannot survive without an underlying claim).)

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when it pleads the factual content necessary to draw a reasonable inference of liability. *Iqbal*, 556 U.S. at 678. While "all well-pleaded facts are accepted as true," "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678; *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).

**B.** **The Court Should Dismiss Plaintiff's Tort Claims Because They Fail to State Viable Claims Upon Which Relief Can Be Granted.**

Counts II, III, and V of Plaintiff's Complaint improperly attempt to convert alleged wrongs sounding in contract into torts and otherwise fail to state viable claims against any Defendant under Georgia law.[6] As explained below, Plaintiff's claims for negligent misrepresentation and fraudulent inducement suffer from multiple, independent fatal defects, and its conspiracy claim cannot survive without a viable underlying tort and is barred by the intra-corporate conspiracy doctrine in any event. All three of those claims should be dismissed in their entirety.

---

[6]     Defendants' Motion to Dismiss explained why Georgia law governs Plaintiff's state-law claims, and Plaintiff has not challenged that proposition. (Doc. 41 at 7-8; *see generally* Doc. 50 (Plaintiff's Response to Defendant's Motion to Dismiss, applying Georgia law.)

**1. Plaintiff's Fraud and Negligent Misrepresentation Claims Are Repackaged Tort Claims, Barred by the Economic Loss Doctrine, and/or Fail For Lack of Reasonable Reliance.**

The primary tort claims asserted in Plaintiff's Complaint – fraudulent inducement (Count III) and negligent misrepresentation (Count II)[7] – are fatally flawed for the same, separately independent reasons, each of which alone requires dismissal: (1) Defendants owed Plaintiff no special duty that would allow an otherwise impermissible conversion of a breach of contract into a tort, (2) Plaintiff cannot establish the requisite due diligence to support fraud or misrepresentation; and (3) they are barred by the well-established economic loss rule because they seek only economic damages – the same damages sought for the alleged breach of contract – and fail to fall within the narrow fraud/misrepresentation exception.

a) **Plaintiff's Fraud and Negligent Representation Counts Constitute Improper Attempts to Repackage a Breach of Contract Claim as Torts.**

Plaintiff's primary tort claims must be dismissed because Plaintiff has not sufficiently alleged a legally cognizable special relationship or other independent duty that could support recovery in tort on what is otherwise solely an alleged breach of contract. The "general rule in Georgia is that a breach of contract cannot constitute

---

[7]     These two tort claims are nearly identical and, for purposes of this Motion, can be analyzed together. *See Holmes v. Grubman*, 691 S.E.2d 196, 200 (Ga. 2010) ("[T]he only real distinction between negligent misrepresentation and fraud is the absence of the element of knowledge of the falsity of the information disclosed," so courts generally apply the "same principles . . . to both fraud and negligent misrepresentation cases.").

a tort unless a special or confidential relationship exists between the parties." *Infinity Transp. III LLC v. XPO Intermodal, Inc.*, 304 F. Supp. 3d 1320, 1331 (N.D. Ga. 2018) (quoting *Cives Corp. v. Se. Invs., LLC (LA),* No. 1:12-CV-2279-RLV, 2014 WL 11822760, at *5 (N.D. Ga. Apr. 14, 2014)); *see also Kin Chun Chung v. JPMorgan Chase Bank, N.A.*, 975 F. Supp. 2d 1333, 1344–45 (N.D. Ga. 2013) ("A plaintiff in a breach of contract case has a tort claim only where, in addition to breaching the contract, the defendant also breaches an independent duty imposed by law."). "[I]t is well settled that the party asserting the existence of a confidential relationship has the burden of establishing its existence." *Akkad Holdings, LLC v. Trapollo, LLC*, No. 1:20-CV-4476-MLB, 2021 WL 5961854, at *7 (N.D. Ga. Dec. 16, 2021) (quoting *Willis*, 740 S.E.2d at 417). Failure to allege such a relationship prompts 12(b)(6) dismissal. *Id.*, at *7.

Plaintiff's only allegations pertaining to the special-relationship/independent-duty requirement are that Defendants violated a generalized duty "of reasonable care and competence" and "an independent common-law duty not to commit fraud," but neither of these purported duties exists in this context (if at all). [Doc. 68 ¶¶ 69, 77, 92–93.] First, any "duty of reasonable care and competence" is not specified in Plaintiff's SAC or supported by any basis in law. [*Id.* ¶¶ 69, 77.] Plaintiff's mere mention of such a duty, the applicability of which is a legal conclusion, plainly fails to satisfy the general federal pleading standard with specific allegations, much less

9

the heightened pleading standard of Rule 9(b).[8] *See Iqbal*, 556 U.S. at 678; *Courtesy Props.*, No. 1:20-CV-02097-SDG, 2020 WL 7698659, at *7; *Intellicig*, No. 1-15-cv-01832-AT, 2016 WL 5402242, at *8 n.8. Even reading Plaintiff's SAC liberally, the sole cases cited by Plaintiff that address such a duty pertain to an allegation that a firearm manufacturer concealed a fatal defect from *individual consumers* and an allegation that a home builder violated a "special duty of disclosure on the builder-seller that markets its new homes to *consumers*." *Jaramillo v. Taurus Int'l Mfg., Inc.*, 2024 WL 5305081, at *7 (M.D. Ga. Sept. 27, 2024); *Holloman v. D.R. Horton, Inc.*, 524 S.E.2d 790, 797 (Ga. Ct. App. 1999). Neither of these cases involves any duty between sophisticated businesses in an arm's length transaction and, notably, the court found no duty in the former case because, as here, the plaintiff merely stated that the duty existed and failed to support its assertion with specific allegations. *See Jaramillo*, 2024 WL 5305081, at *7 (determining that plaintiff's negligent misrepresentation and fraud claims were barred by the economic loss rule). It is difficult to see how Plaintiff's ill-described consumer doctrine has any applicability to the parties' business transaction between indisputably sophisticated parties.

---

[8]    Both negligent misrepresentation and fraud are subject to the heightened particularity-pleading requirement of Rule 9(b). *Courtesy Props., LLC v. S&ME, Inc.*, No. 1:20-CV-02097-SDG, 2020 WL 7698659, at *7 (N.D. Ga. Dec. 28, 2020); s*ee also Intellicig USA LLC v. CN Creative Ltd.*, No. 1-15-cv-01832-AT, 2016 WL 5402242, at *8 n.8 (N.D. Ga. July 13, 2016) ("It is by now fairly clear that Rule 9(b) applies to negligent misrepresentation claims in the Eleventh Circuit.").

Indeed, if Plaintiff's proffered "duty of reasonable care and competence" were enough to satisfy the independent-duty requirement here, then the exception would swallow the rule and essentially every alleged breach of contract would also be actionable in tort. Plaintiff's suggestion of what is apparently a made-up "independent duty" should be flatly rejected.

Second, Plaintiff has offered no viable legal basis to support any "common-law duty not to commit fraud," and none exists. In an effort to establish such a duty, Plaintiff cites the provision of the Georgia code (O.C.G.A. § 23-2-53 ) that generally defines fraud as a basis for equitable relief along with several Georgia state and federal court decisions applying it, and the Restatement (Second) of Torts § 552 pertaining to negligent mispresentation, as adopted by Georgia courts. [Doc. 68 ¶ 93.] None of these alleged authorities supports the existence of a "common-law duty not to commit fraud," and beyond that, none are even arguably on point. The Georgia statute provides only that, where an obligation to communicate a material fact arises – either from "the confidential relations of the parties or from the particular circumstances of the case" – then suppression of that fact constitutes fraud. O.C.G.A. § 23-2-53. Nothing about this statute creates an independent duty "not to commit fraud"; it simply defines what circumstances comprise fraud to begin with. Moreover, even if it could be read to create an independent duty as Plaintiff alleges, Plaintiff's allegations do not plausibly support any obligation to disclose here –

Plaintiff has not alleged a confidential relationship and offers no facts to support "particular circumstances" giving rise to such an obligation in this case. [Doc. 68 ¶ 93.] *See Parson-Nicholson, Inc. v. Dalton Carpet Finishing Co.*, 289 S.E.2d 25, 26 (Ga. Ct. App. 1982) (explaining that, "where the relationship between the parties is that of businessmen . . . there is no confidential relationship between them."). Nor does the Restatement (Second) of Torts § 552 even suggest, much less state, that a "duty not to commit fraud" exists – it simply summarizes, *i.e.* "restates," the elements of the tort of negligent misrepresentation. In sum, Plaintiff suggests that because the torts of fraud and negligent misrepresentation exist, an "independent duty" not to commit them arises, which in turn triggers the otherwise-narrow exception to the general rule that a breach of contract is not actionable in tort. Plaintiff's theory, if adopted, would effectively eviscerate the rule, for any tort in existence would create such a duty. That theory should be flatly rejected.

In stark contrast to the inapplicable authorities cited in Plaintiff's Complaint, cases from this Court are directly on point and require dismissal here. The facts alleged in this case are strikingly similar to this Court's 2021 decision in *Akkad Holdings*, dismissing the Plaintiff's fraud and negligent misrepresentation claims on grounds that contract claims simply repackaged as torts are not actionable. There, the plaintiff contracted with the corporate (LLC) defendant to purchase 3.75 million COVID-19 test kits. *Akkad Holdings*, 2021 WL 5961854, at *1. Prior to entering the

contract, the LLC defendant and its CEO (also named individually on the plaintiff's tort claims) repeatedly represented to the plaintiff that the LLC could supply the requested number of test kits and that the manufacturer had Emergency Use Authorization from the FDA for the tests. *Id.* Plaintiff contracted to purchase the tests in reliance on those representations, but not long after executing the agreement, plaintiff learned that the defendant could not actually supply the tests because the manufacturer did not have them in stock and they lacked EUA. *Id.* at *2. The Court dismissed plaintiff's fraud and negligent misrepresentation claims under Rule 12(b)(6), holding that because those claims "relate[d] only to duties imposed under the agreement, they cannot be re-packaged as independent torts." *Id.* at *7. For the exact same simple reason, the Court should dismiss Plaintiff's tort claims here – Plaintiff has not alleged any special or confidential relationship or any duties that arose outside of the alleged agreement(s) entered into between the Companies. *See also Courtesy Props., LLC v. S&ME, Inc.*, No. 1:20-cv-02097-SDG, 2020 WL 7698659, at *6 (N.D. Ga. Dec. 28, 2020) (dismissing fraud claim because plaintiff did not plead any special relationship and all duties at issue arose solely from underlying contract). Nor could Plaintiff do so because none exists. Plaintiff cannot wave a wand to create a tort out of what is otherwise factually, at best, a breach of contract. All of its tort claims fail to state a cognizable claim and must be dismissed.

13

**b) Plaintiff's Allegations Foreclose Proof of the Requisite Reasonable Reliance.**

Plaintiff's tort claims should also be dismissed for the second, independent reason that they fail to allege the requisite reliance with specificity. Both fraud and negligent misrepresentation require, as an essential element, proof of "justifiable reliance." *Next Century Commc'ns Corp. v. Ellis*, 214 F. Supp. 2d 1366, 1370 (N.D. Ga. 2002). In order to establish justifiable reliance, a plaintiff must be able to demonstrate that it exercised due diligence, and this burden is particularly heavy where the parties are sophisticated and engaged in an arm's-length transaction. *Tri-State Consumer Ins. Co. v. LexisNexis Risk Sols. Inc.*, 823 F. Supp. 2d 1306, 1320 (N.D. Ga. 2011) ("Georgia law places a significant due diligence burden on sophisticated parties engaged in arms-length transactions. . . . Georgia courts do not afford legal relief when one blindly relies on misrepresentations of the other party as to matters of which he could have informed himself.") (cleaned up); *Hartsfield v. Union City Chrysler-Plymouth*, 463 S.E.2d 713, 716 (Ga. Ct. App. 1995) ("Fraud cannot be the basis of an action if it appears that the party alleging the fraud had equal and ample opportunity to prevent it and yet made it possible through the failure to exercise due diligence."). A court can determine reasonable reliance as a matter of law where the Plaintiff failed to exercise the required diligence. *Raysoni v. Payless Auto Deals, LLC*, 766 S.E.2d 24, 26 (Ga. 2014).

14

Given Plaintiff's indisputable position as a sophisticated business party and its allegations that it knew of TRG's precarious financial position, Plaintiff fails to plausibly support entitlement to tort relief because its allegations, even as modified in the SAC, negate proof of the requisite due diligence. Plaintiff's allegations establish that it was well aware that TRG had been unable to make the payments that Plaintiff claimed were due, that it knew TRG could sustain only a $10,000 monthly payment, that TRG reported a $687,153 loss the previous year, that it had over $13 million in liabilities, and that it was seeking outside funding (the Five Crowns Proposed Liquidity Deal) to pay its alleged outstanding debts. [Doc. 68 ¶¶ 24, 27–28, 30.] Against this background, Plaintiff suggests that it was tricked into a deal with Defendants that it would not have entered if it had known TRG's precarious financial condition – but these allegations establish that it clearly *did know* that fact. Plaintiff cannot establish fraud based on allegedly having been deceived about TRG's precarious financial condition, for its own allegations establish that Plaintiff was well aware of those facts.

Plaintiff's conclusory assertion that it exercised reasonable diligence and its allegations that Defendants did not disclose voluntarily the existence of the DOJ Case (which it could not do) or concerns about Dr. Lalaji's licensure status do not change the result. As to the DOJ case, Plaintiff alleges that it was not discoverable because the action was sealed from public disclosure, but Plaintiff *never* asserts that

it actually conducted any investigation into TRG's financial or legal position, nor acknowledges that TRG was not able to lift that seal. [Doc. 68 ¶¶ 44, 73, 96.] Even if TRG were able to discuss the DOJ Case, it was not bound to volunteer to Plaintiff every piece of financial or legal information that was not discoverable to the public in the parties' arm's length business negotiation, particularly where that question was never asked. Furthermore, and perhaps more importantly, TRG did not enter into the consent judgment until over a month *after* the "Modification" was allegedly entered, so any financial liabilities from the DOJ case were at that point purely hypothetical. As to Dr. Lalaji's licensure, all relevant facts were a matter of public record that Plaintiff could have easily uncovered through minimal research. Plaintiff also never contacted Five Crowns Capital about the terms, representations, or probability of the proposed Five Crowns Proposed Liquidity Deal, even though, by its plain terms, it was not a binding contract and they contend it was a key factor in their agreement to the Modification.[9] (*Id.* ¶ 34.)

Plaintiff does not allege that it sought any of this information. Instead, Plaintiff alleges conclusorily that it exercised diligence but otherwise admits that it accepted the risk of continuing to do business with TRG despite knowing of its financial

---

[9]    It is also notable that, insofar as Plaintiff relies on the alleged improbability of the Five Crowns Proposed Liquidity Deal as a basis for its tort claims, there can be no doubt that whether that deal would go through or not was outside the control of any of the Defendants – whether any third party will issue funding in circumstances like this always lies in that third party's sole discretion.

challenges. Plaintiff has failed to plead the requisite diligence with particularity as required by Rule 9(b), and its tort claims must be dismissed. *See Courtesy Properties, LLC v. S&ME, Inc.,* No. 1:20-CV02097-SDG, 2020 WL 7698659, at *8 (N.D. Ga. Dec. 28, 2020) (noting that bare allegations of "reliance on alleged misrepresentations, bereft of any additional detail, will not suffice under Rule 9(b)" and dismissing fraud claim for failure to allege requisite diligence); *see also Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1128 (11th Cir. 2019) ("Simply alleging the technical elements of fraud without providing . . . underlying supporting details will not satisfy the rule's pleading-with-particularity requirement."); *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1289 (11th Cir. 2007) ("[A] court can find that a party has failed to exercise due diligence as a matter of law where due diligence failures are particularly egregious.").

c) **<u>The Economic Loss Rule Bars Plaintiff's Tort Claims</u>.**

Finally, Plaintiff's fraudulent inducement and negligent misrepresentation claims are due to be dismissed as barred by the economic loss rule. Georgia courts have adopted a broad and expansive economic loss rule, pursuant to which a plaintiff can recover in tort only for economic losses that result from personal injury or property damage. *Gen. Elec. Co. v. Lowe's*, 608 S.E.2d 636, 637 (Ga. 2005) ("The 'economic loss rule' generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort."); *see also Murray*

17

*v. ILG Techs., LLC*, 378 F. Supp. 3d 1227, 1243 (S.D. Ga. 2019), *aff'd,* 798 F. App'x 486 (11th Cir. 2020) (detailing history of economic loss rule). Although there is a narrow fraud/misrepresentation exception to this rule, it does not apply here for at least two reasons.

First, the fraud/misrepresentation exception to the economic loss rule necessarily cannot apply because, as explained above, Plaintiff has failed to plead the requisite due diligence to establish a claim of fraud or misrepresentation to begin with. *See, e.g., Advanced Drainage Sys., Inc. v. Lowman*, 437 S.E.2d 604, 607 (Ga. Ct. App. 1993) (explaining that plaintiff must show essentially the same five elements of a fraud claim to benefit from misrepresentation exception to economic loss rule); *Odelia v. Alderwoods (Georgia), LLC*, 823 F. App'x 742, 749 (11th Cir. 2020) (applying Georgia law to determine that exception did not apply because plaintiff did not establish required elements of fraud). The economic loss rule plainly bars any damages arising from an alleged breach of contract when the plaintiff alleging misrepresentation or fraud related to that contract fails to show that he is entitled to this exception.

Second, even if Plaintiff could properly plead its tort claims, the exception would still bar them because it applies only when such claim is based on post-contractual conduct that results in entirely different potential damages than those flowing from the contract breach, and not when the alleged fraudulent conduct stems

18

from pre-contractual conduct giving rise to essentially the same claimed damages as the contract breach itself. *Emmer v. WABII Branding Inc.*, No. 1:21-CV-03370-ELR, 2022 WL 22886642, at *14 (N.D. Ga. Aug. 8, 2022). Here, Plaintiff seeks purely economic damages that, by its express admissions in the Complaint, do not involve any personal injury or property damage and are the same as the damages sought from TRG's alleged breach of contract – "the amount of the Non-Payment" (plus interest, costs and fees, and in the case of fraud, also punitive damages).[10] [*Compare* Doc. 68 ¶ 99 (describing damages sought on tort claims as "actual damages in the amount of the Non-Payment plus applicable pre- and post-judgment interest…") *with id.* ¶ 65 (describing contract-breach damages the exact same way, *i.e.*, the "Non-Payment" amount).] The economic loss rule therefore bars recovery in tort of those purely contractual losses, which supplies yet another independent basis for their dismissal.

---

[10]    Plaintiff also references "rescissory damages" [Doc. 68 ¶ 99], but it is well established that where, as here, the plaintiff has elected to sue on the underlying contract, plaintiff has waived any claim of rescission. *See Liberty v. Storage Trust Props.*, L.P. 600 S.E.2d 841, 846 (Ga. Ct. App. 2004) ("In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for breach; or (2) rescind the contract and sue in tort for fraud." ); *Novare Grp., Inc. v. Sarif*, 718 S.E.2d 304, 307 (Ga. 2011) (cleaned up) ("Where a party elects to rescind the contract, he must do so prior to filing the lawsuit."); *Authentic Architectural Millworks, Inc. v. SCM Grp. USA, Inc.*, 586 S.E.2d 726, 827 (Ga. Ct. App. 2003) (noting that when a party affirms a contract, "that party is bound by the contract's terms and is subject to any defenses which may be based on the contract").

**2. Plaintiff's Conspiracy Claim Must Fail Due to the Absence of Any Actionable Underlying Tort and Also Under the Intra-Corporate Conspiracy Doctrine.**

Plaintiff's only other tort claim, alleging a "conspiracy" between TRG, its CEO Dr. Lalaji, and its then-CFO Mr. Stephens to commit fraud, must also be dismissed for either of two separate reasons. First, a conspiracy is not an independent cause of action and cannot exist absent an underlying viable tort that the alleged conspirators might have conspired to commit. *Akkad Holdings*, 2021 WL 5961854, at *9 (quoting *Dyer v. Honea*, 557 S.E.2d 20, 25 (Ga. Ct. App. 2001) ("The cause of action for civil conspiracy lies not in the conspiracy itself, but in the underlying tort committed against the plaintiff and the resulting damage."). Plaintiff's conspiracy claim relies on Count III– fraudulent inducement, [Doc. 68 ¶ 108]– and must fail because that Count is due to be dismissed for the reasons identified above. *See Akkad Holdings*, 2021 WL 5961854, at *9 (dismissing plaintiff's conspiracy claim because all other tort claims were also dismissed); *Ass'n Servs., Inc. v. Smith*, 549 S.E.2d 454, 460 (Ga. Ct. App. 2001) ("It is well settled that a plaintiff cannot maintain an action for a conspiracy in the absence of underlying actionable conduct.").

Second, Plaintiff's conspiracy claim is barred by the intra-corporate conspiracy doctrine. A conspiracy, by its nature, requires at least two separate tortious actors. *Cook v. Robinson*, 116 S.E.2d 742, 744 (Ga. 1960) (defining a conspiracy as "a combination between two or more persons either to do some act

20

which is a tort, or else to do some lawful act by methods which constitute a tort.").

Under the intra-corporate conspiracy doctrine, a corporation cannot conspire with its

agents because general agency principles treat the agent and the corporation as one

in the same. *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767 (11th Cir.

2000); *Alta Anesthesia Assocs. of Ga., P.C. v. Gibbons*, 537 S.E.2d 388, 394 (Ga.

Ct. App. 2000) ("[A] corporation cannot conspire with itself and . . . employees of a

corporation are considered to be part of the corporate entity.") Here, the combination

alleged by Plaintiff consisted only of TRG, its CEO Dr. Lalaji, and its then-CFO Mr.

Stephens, whose sole alleged involvement was his provision of financial statements

on TRG's behalf. [Doc. 68 ¶¶ 26–32, 79–99, 108–11.] Plaintiff fails to allege that

any of the alleged coconspirators – TRG, Dr. Lalaji, and Mr. Stephens – are separate

tortious actors, and instead its allegations reflect the opposite, that all were acting

through and on behalf of TRG. Plaintiff's conspiracy claim therefore must be

dismissed because TRG cannot conspire with itself, acting through its agents (Dr.

Lalaji, Mr. Stephens, or otherwise). *See Nalley Northside Chevrolet, Inc. v. Herring*,

450 S.E.2d 452, 455 (Ga. Ct. App. 1994) (reversing jury verdict since there was no

evidence of conspiracy where only alleged combination was between defendant and

its employee).

21

C. **Plaintiff's Equitable Claims of Quantum Meruit and Unjust Enrichment Against Dr. Lalaji Should Be Dismissed.**

Although in asserting its breach of contract claim only against TRG, Plaintiff acknowledges that the business dealings underlying its claims were solely between the Companies, Plaintiff nevertheless names Dr. Lalaji as an individual defendant on its extra-contractual theories of quantum meruit and unjust enrichment. Dr. Lalaji cannot be held personally liable on either of those theories, and both must be dismissed as to him.[11]

Even after Defendants' motion to dismiss Plaintiff's FAC laid bare the deficiencies in Plaintiff's equitable claims, Plaintiff's allegations in its SAC reaffirm that any benefit Plaintiff allegedly conferred through its provision of services flowed to TRG alone, with Dr. Lalaji using Plaintiff's services, at most, solely in his professional capacity to treat patients, the same as any medical provider. [Doc. 68 ¶¶ 112–20, 130–36.] Those amended allegations reference Dr. Lalaji as having

---

[11]    Plaintiff's quantum meruit and unjust enrichment claims can be analyzed together and are due to be dismissed for the same reasons, i.e. that Plaintiff has not alleged that it conferred any benefit on Dr. Lalaji personally and has identified no basis on which liability can otherwise be attributed to him. See Krevolin & Horst, LLC v. Raheel, No. 1:17-CV-04235-ELR, 2019 WL 13061306, at *8 n.6 (N.D. Ga. Sept. 6, 2019) (explaining that quantum meruit and unjust enrichment claims are subject to dismissal for same reasons despite slight differences between them); Xinguang Tech. Co. Ltd. of Sichuan Province v. Hyloft, Inc., No. 1:07-CV-2786JEC, 2008 WL 11407356, at * 7 (N.D. Ga. Sept. 9, 2008) ("Quantum meruit and unjust enrichment are similar concepts, but they are not interchangeable. In addition to the requirements of unjust enrichment, quantum meruit "requires an additional showing . . . that [the] plaintiff has an expectation of payment.")).

"request[ed]" and "used" Ramsoft's services, and that Plaintiff allegedly expected payment from him, but these are nothing more than conclusory assertions with no facts in support, offered in an obvious effort to create individual liability as to Dr. Lalaji where none otherwise exists. [*Id.*] Meanwhile, all of Plaintiff's factual allegations establish that the underlying events consisted solely of business dealings between the Companies, and that Dr. Lalaji's involvement was only in his official capacity as TRG's CEO. [*Id.* ¶¶ 10–38.] Plaintiff's quantum meruit and unjust enrichment claims, premised on nothing more than conclusory assertions that are not only unsupported but even contradicted by the facts that *are* alleged, fail to state a claim upon which relief can be granted as to Dr. Lalaji and must be dismissed. *Krevolin*, 2019 WL 13061306, at *8 (dismissing quantum meruit and unjust enrichment claims asserted against corporate defendant's CEO in individual capacity because plaintiff failed to show benefit conferred on him individually where all benefits flowed instead to the business); *Pharmerica Long-Term Care, Inc. v. Krystopowicz*, No. 1:09-CV-2056-CAP, 2012 WL 12950329, at *6 (N.D. Ga. Aug. 29, 2012) (dismissing unjust enrichment claim where plaintiff conferred a benefit on corporation but not individual defendant).

Finally, in addition to the fact that Plaintiff has not alleged a plausible basis for recovery on its equitable claims against Dr. Lalji individually, Plaintiff's claims also fail because it has not alleged a single fact that could support piercing the

23

corporate veil. Georgia law has long recognized the "corporate identity as separate from that of its principals or owners, so long as the corporate forms are maintained," and a related "veil" over a company's officers, directors, shareholders, and agents that shields them from the debts and obligations of the corporation. *Yukon Partners, Inc. v. Lodge Keeper Grp., Inc.*, 572 S.E.2d 647, 651 (Ga. Ct. App. 2002); *Bonner v. Brunson*, 585 S.E.2d 917, 918 (Ga. Ct. App. 2003). The corporate veil cannot be pierced absent evidence that its individual owner/officer has used the corporate entity "to defeat justice, perpetuate fraud or to evade contractual or tort responsibility." *Kelley v. Austell Bldg. Supply, Inc.*, 297 S.E.2d 292, 297 (Ga. Ct. App. 1982); *Hi-Tech Pharms., Inc. v. S&S Enters., Inc.*, No. 1:07-CV-3183-CC, 2008 WL 11334023, at *5 (N.D. Ga. Sept. 30, 2008) (noting that a corporate officer may be liable for corporation's acts only upon proof of abuse of corporate form).

Here, Plaintiff's Complaint is completely devoid of even a single allegation that Dr. Lalaji disregarded or abused the corporate form. Nowhere in the Complaint does Plaintiff allege or attempt to demonstrate that TRG was set up as a sham corporation intended to serve as an instrumentality through which Dr. Lalaji could conduct his personal transactions, that Dr. Lalaji comingled TRG's funds with those of his own, or that he regarded TRG and himself as a single entity. In short, Plaintiff does not even imply, much less allege, sufficient facts to support piercing the corporate veil on any theory, and individual liability for TRG's acts therefore cannot

24

be attributed to him. *See Amason v. Whitehead*, 367 S.E.2d 107, (Ga. Ct. App. 1988) ("Sole ownership of a corporation by one person . . . is not a factor [relevant to piercing corporate veil], and neither is the fact that the sole owner uses and controls it to promote his ends.") (cleaned up); *see also Krevolin*, 2019 WL 13061306, at *7 ("[S]imply functioning as the corporate defendant's representative does not, on its own, abuse the corporate form."). Plaintiff therefore cannot establish liability as to Dr. Lalaji on either of its contract-alternative theories, and both must be dismissed against him.

## III.    CONCLUSION

The root of all of Plaintiff's claims is TRG's alleged breach of contract. In an effort to expand the case into something it is not, Plaintiff concocts alternative theories of tort liability that are facially defective and attempts to apply its contract-alternative theories against Dr. Lalaji individually without any proper basis to do so. Counts II, III, and V should be dismissed in their entirety; and Counts VI and IX and VIII[12] should be dismissed as to Dr. Lalaji individually.

---

[12] Count VIII seeks recovery of attorneys' fees from Defendants, but because all counts asserted against Dr. Lalaji individually are due to be dismissed, there is no basis on which Plaintiff's claim for attorney's fees can be pursued so it must be dismissed as well. *Akkad Holdings*, 2021 WL 5961854, at *9 (citing *McCalla Raymer, LLC v. Foxfire Acres, Inc*., 846 S.E.2d 404, 413 (Ga. Ct. App. 2020) (an attorneys' fee claim is "derivative" so it cannot survive without an underlying claim).)

Dated: March 18, 2026

STEMBRIDGE TAYLOR LLC

*/s/ Lisa D. Taylor*
Lisa D. Taylor
Georgia Bar No. 235529
lisa@stembridgetaylor.com
3651 Mars Hill Road, Suite 2900-B
Watkinsville, Georgia 30677
Telephone: 678-269-0402

John T. Stembridge
Georgia Bar No. 678605
john@stembridgetaylor.com
4840 Roswell Road, Suite E300
Atlanta, Georgia 30342
Telephone: 678-362-6567

Attorneys for Defendants

**Rule 7.1(D) Certificate of Compliance**

I certify that this brief has been prepared in accordance with the page and type limitations of the Local Rules of this Court (Times New Roman 14 point).

/s/ Lisa D. Taylor
Lisa D. Taylor
Georgia Bar No. 235529

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RamSoft USA, Inc.,

              Plaintiff,

v.

The Radiology Group LLC, Anand
Lalaji, & Joe Stephens,

              Defendants.

CIVIL NO. 1:24-cv-04821-TRJ

## <u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the foregoing **DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT** using the CM/ECF system, which will automatically send an email notification of such filing to all attorneys of record.

Dated: March 18, 2026

                             **STEMBRIDGE TAYLOR LLC**

                             */s/ Lisa D. Taylor*
                             Lisa D. Taylor
                             Georgia Bar No. 235529

27